**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DARRIN M. SEAMSTER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-3069 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | * * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff/Claimant Darrin M. Seamster petitions this Court to review the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving his claim for disability insurance benefits ("DIB"). ECF No. 1. The Court has considered the record and the parties' briefs. ECF Nos. 6, 11, 13–14. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court affirms the judgment of the Social Security Administration.

## PROCEDURAL BACKGROUND

On March 13, 2023, Seamster applied for DIB under Title II of the Social Security Act. R. 88. His claim was denied initially and on reconsideration. R. 98, 87. On Seamster's request, an Administrative Law Judge (ALJ) held a hearing to review his claim. R. 112, 39–73. Following the hearing, the ALJ issued a decision in which the ALJ found that Seamster was not disabled. R. 17–38. Seamster requested that the Social Security Appeals Council review the ALJ's decision. R. 186–88. On August 4, 2025, the Appeals Council denied Seamster's request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security

Administration. R. 7. Seamster then timely petitioned for judicial review in this Court on September 16, 2025. ECF No. 1.

## THE ALJ'S DECISION

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ determined that Seamster had not "engaged in substantial gainful activity since July 13, 2022, the alleged onset date." R. 22. At step two, the ALJ found that Seamster had the following severe impairments: "major depressive disorder, posttraumatic stress disorder, and anxiety disorder." R.

23.[1] At step three, the ALJ determined that Seamster did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 24. The ALJ further determined that Seamster had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple and some complex instructions. The claimant can maintain pace to complete a workday and work week for non-production work (no assembly line work). The claimant can tolerate no more than occasional changes in the routine work setting. The claimant can have occasional interaction with supervisors, and he can have superficial contact with coworkers and the public.

R. 25–26. At step four, the ALJ determined that Seamster was "unable to perform any past relevant work." R. 31. At step five, the ALJ found that, "[c]onsidering [Seamster's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Seamster] can perform." R. 31. As a result, the ALJ concluded that Seamster was not disabled. R. 33.

## STANDARD OF REVIEW

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether

[1] The ALJ also found that Seamster had the non-severe impairments of obesity, obstructive sleep apnea, knee pain from degenerative changes in the patellofemoral compartment, hyperlipidemia, and gastroesophageal reflux disease. R. 23.

the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

**DISCUSSION**

Seamster argues that the ALJ's pace limitation is not supported by substantial evidence. ECF No. 11 at 7. A claimant may challenge a pace limitation under either the ALJ's RFC assessment or step five of the sequential evaluation process. *See Ursula G. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. SAG-18-1841, 2019 WL 2233978, at *2 (D. Md. May 23, 2019) ("Plaintiff presents the argument as a flaw in the hypothetical presented to the [vocational expert] instead of a flaw in the RFC assessment, although the deficient RFC assessment would also infect the hypothetical based on that assessment."). Here, Seamster argues that the ALJ failed to define a pace limitation to the vocational expert at step five, so the Court reviews Seamster's argument under that framework.

At step five of the sequential evaluation process, the Commissioner bears the burden to prove "that the claimant can perform … work that exists in significant numbers in the national economy." *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016) (citation modified). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (citation omitted). The Fourth Circuit gives ALJs "great latitude in posing hypothetical questions … so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished table decision). To be supported by substantial evidence, a hypothetical posed to the vocational expert must be adequately defined. *See Geneva W. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. SAG-18-1812, 2019 WL 3254533, at *3 (D.

Md. July 19, 2019) (remanding because the production rate pace limitation was inadequately defined in the ALJ's hypothetical).

A pace limitation is adequately defined within a hypothetical if one of four conditions is met. First, regulations may define the pace limitation or a term similar to the limitation. *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019). Second, caselaw may define the pace limitation. *See Thomas*, 916 F.3d at 312 (discussing frequency with which limitation appeared in caselaw); *Perry*, 765 F. App'x at 872 (same). Third, the definition of the pace limitation may be self-explanatory. *Perry*, 765 F. App'x at 872. Fourth, the ALJ may adequately define the pace limitation themselves. *Id.*; *see Thomas*, 916 F.3d at 312 (holding limitation inadequately defined "without elaboration").

The Fourth Circuit has held that three pace limitations, in particular, fail to satisfy any of the above conditions without further explanation: limiting a claimant to work not "requiring a production rate or demand pace," *Thomas*, 916 F.3d at 312, limiting a claimant to a "non-production oriented work setting," *Perry*, 765 F. App'x at 872–73, and limiting a claimant to work with "no fast-paced production requirements such as assembly line work or piecemeal quotas," *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548, at *4–5 (4th Cir. Jan. 7, 2025). Thus, if an ALJ poses a hypothetical using one of the above three pace limitations, they must further explain the scope of the limitation to adequately define it.

Here, the ALJ posed the vocational expert a hypothetical that limited Seamster in part to "non-production work, and by non-production I mean no assembly line work where coworkers are side by side and the work of one affects the work of others." R. 59.[2] Thus, the ALJ limited

[2] The fact that the ALJ did not include the added description of assembly line work in the RFC does not hinder the Court's review. A court may rely on a description of a limitation that was only presented to the vocational expert to determine whether a limitation was adequately defined. *See*

Seamster to “non-production work,” defined non-production work as “no assembly line work,” and then further defined “assembly line work.” As discussed above, the limitations “non-production work” and “assembly line work” are inadequately defined on their own. *Perry*, 765 F. App’x at 872–73; *Linger*, 2025 WL 40548, at *4–5. Thus, the question is whether, under the fourth condition, the language that the ALJ added describing assembly line work adequately defines the pace limitation.

The Court finds that, in this case, language describing assembly line work as work “where coworkers are side by side and the work of one affects the work of others” adequately defines the pace limitation posed to the vocational expert for two interdependent reasons.

First, unlike the nebulous phrases “non-production work” and “assembly line work,” the language posed by the ALJ provides two distinct criteria—that the job cannot involve working side by side with others and that the hypothetical claimant’s work cannot affect the work of others—against which the vocational expert could filter potential jobs that the claimant could not perform. As a result, the language adequately defines “the intended scope of the limitation.” *Linger*, 2025 WL 40548, at *5; *see also, e.g.*, *Teresa B. v. Comm’r, Soc. Sec. Admin.*, Civil Action No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (finding identical language “provided a clear explanation of the ‘production-rate pace’ limitation” in the RFC).

---

*Briana H. v. O’Malley*, Civil Action No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (“[B]ecause the ALJ explained the meaning of ‘production rate’ to the [vocational expert], the Court finds that the ALJ adequately explained the term ‘production rate pace.’”); *Jackie W. v. Comm’r, Soc. Sec. Admin.*, Civil Action No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (“While the ALJ did not include the term ‘assembly-line work’ in her RFC, her inclusion of the term in the hypothetical provides enough clarity for this Court’s review.”). Here, although assembly line work was only described when the ALJ posed the hypothetical to the vocational expert, the Court may nevertheless rely on this description to determine if the limitation posed was adequately defined.

Second, the language adequately defines the pace limitation because it serves as a *definition* of, rather than an *example* of, the limitation. *See Christine D. v. Bisignano*, Civil Action No. DRM-25-2044, 2026 WL 1501145 (D. Md. May 29, 2026). In *Christine D.*, an ALJ posed a hypothetical limiting a claimant to work not involving a "high-quota production-rate pace," such as, "*for example*, rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the others." *Id.* at *5 (emphasis added). This Court determined that the language describing rapid assembly line work was insufficient to define the limitation posed by the ALJ because the "mere inclusion of an illustrative example, even with numerous descriptors, does not define or explain the scope of the restriction." *Id.* The instant case is distinguishable from *Christine D.* Unlike the ALJ in *Christine D.* who used assembly line work as merely an "illustrative example" of a pace limitation, here, the ALJ defined the scope of non-production work through assembly line work, explaining that it "*mean[t]* no assembly line work where coworkers are side by side and the work of one affects the work of others." R. 59 (emphasis added). Because the ALJ's language defined, rather than exemplified, the pace limitation posed in the hypothetical, it adequately delineated the scope of the limitation.

Because the ALJ posed the pace limitation in the hypothetical to the vocational expert using distinct criteria to define, rather than exemplify, the scope of the limitation, it is adequately defined and thus supported by substantial evidence. Therefore, the Court affirms.

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is AFFIRMED. A separate order follows.

Date: August 20, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge